HELEN POPE *et al. v.* GEORGE ALWELL *et al.*

LANDS OF WARDS. *Application to sell. Compliance with the law presumed.*
It will be presumed that the application to sell lands descended to
the wards, for the purpose of paying the debts of the ancestor, was
made in writing and in strict conformity to the requirements of the
statute, unless it appear to the contrary upon the face of the record.

FROM MONTGOMERY.

Appeal from the Chancery Court at Clarksville. GEO.
E. SEAY, Ch.

L. W. FINLAY, J. W. SCALES and THOMAS B.
TURLEY for complainants.

SMITH & LURTON and HOUSE & MERRITT for de-
fendants.

COOKE, J., delivered the opinion of the court.

Bennett Searcy died intestate, January 18, 1818. He
left surviving him an only daughter, Marcia F., then
the wife of C. D. McLean. Letters of administration
were, at the January term, 1818, granted to his widow
and the said C. D. McLean, by the court of pleas
and quarter sessions of Montgomery county. Said
daughter died intestate, November 29, 1818, leaving
surviving her two minor children, Maria D. and
Marcia S. McLean, as well as her said husband, the
father of the children.

The real estate of which said Bennett Searcy died
seized and possessed, by the death of his said daughter,

descended through her to her said children. On January 19, 1819, said C. D. McLean was duly appointed guardian of said minors, Maria D. and Marcia S. McLean, by said court of pleas and quarter sessions of Montgomery county, in which said letters of administration had been granted, gave bond in the sum of $30,000 as such, and entered upon the duties of said trust. And on January 22, 1819, the following order or decree was entered of record by said court of pleas and quarter sessions of Montgomery county, to-wit:

"This day came into court, Charles D. McLean, the father and guardian of Maria D. and Marcia S. McLean, infants, under the age of twenty-one years, and applies for an order of this court to sell so much of the real estate of said infants as will pay debts and demands existing against the estate of his said wards, of which he has had notice; and now it appearing to the satisfaction of the court, that there are just debts and demands against the estate of said infants, to about the sum of five thousand dollars; and it appearing also to the satisfaction of the court that said guardian has had notice of such debts and demands; and it appearing also that a sale made by said guardian will be much more beneficial for said infants than a sale of the real estate by execution; and it appearing that said real estate will be subjected to execution sale unless said debts and demands are paid and satisfied; and it appearing likewise that said infants have no personal estate wherewith the said debts and demands are to be satisfied and paid. Therefore, for the payment of said debts and demands, it is hereby ordered, adjudged and decreed, by this court, that said guardian sell the lots in the town of Clarksville, in Montgomery county, in this State, known in the plan of said town by Nos. 88, 87, 86, 85, 83, 82 and 81, and also a tract of land, etc., (describing it), belonging to said Judge Searcy, deceased, being a part of the real estate belonging to said infants, which descended to their mother, Marcia S. McLean, as heir-at-law of Bennett Searcy, deceased, and to said infants as sole heirs-at-law of their said mother, Marcia S. McLean, deceased; and that said property be sold by said guardian at auction at the court-house, in the said town of Clarksville, after giving proper notice, on the same credit and under the same regulations as property sold by executors or administrators is or may be sold."

At the July term, 1819, of said court, an additional order or decree was entered, reciting that the

personal property and lands of the said Bennett Searcy, deceased, theretofore sold, were not sufficient to pay the debts due from said estate, and permitting said guardian to sell other designated lots and parcels of said real estate of the said decedent. And at the January term, 1820, of said court, still another order or decree was entered with like recitals, and ordering other additional specified lots and parcels of said real estate descended to said heirs to be sold for the satisfaction of said remaining indebtedness of the estate of said Bennett Searcy, deceased. Said guardian, in pursuance of said orders, proceeded to sell said designated portions of said real estate to various purchasers, and executed deeds in fee simple to the respective purchasers of the same, all of which were executed in the years 1819 and 1820, so far as they appear in these records, and the respondents in these cases are in possession of the portions of said lots and lands respectively, as alleged in the respective bills, claim them in fee, and holding them under *mesne* conveyances from said purchasers from said guardian under said decrees down to themselves, they and those under whom they claim have held the same continuously from the date of said deeds executed by said C. D. McLean, as guardian, to the time of the filing of these bills in 1879 and 1880. The complainants in all of said bills, as well as in those against Harrison and others, and Couts and others, already decided, are the same in each case, and are the descendants and heirs-at-law of said wards, Maria D. and Marcia S. McLean, and these bills are filed seeking to have

said deeds executed by said guardian, C. D. McLean, under said decrees declared void, and removed as clouds upon their title to said lands, upon the alleged grounds that said decrees were void and conferred no authority upon said guardian to execute the same; and that said deeds were only effective to convey the life estate of their said father and gaurdian, Charles D. McLean, in said lands, which he held as tenant by the curtesy consummate, and which had not fallen in, he being still living when said bills were filed, and that their remainder interest in said lands, which they have by inheritance from his said wards, is unaffected by said deeds.

By the fifth section of the act of North Carolina, of 1789, chapter 35, it was enacted: "That when any guardian shall have notice of any debt or demand against the estate of his or her ward, he or she may apply to the county court wherein such guardianship was granted, for an order to sell so much of the personal or real estate of such ward as may be sufficient to discharge such debt or demand, and such order of court shall particularly specify what property m iy be so sold, and such property shall be sold on the same credit and under the same regulations as property sold by executors or administrators is, or may be by law, and the proceeds of such sales shall be considered as assets in the hands of the guardian for the benefit of the creditors, in like manner as assets in the hands of an administrator or executor after *scire facias,* as by the act directed" etc.

The principal allegations upon which it is alleged

said decrees were void, are that said wards, Maria D.
and Marcia S. McLean, were not legally before the
court, by the service of process upon them or other-
wise, when said decrees were made; that said guard-
ian never made any written application to said court,
by petition or otherwise, to which said minors were
parties; that there were no adversary proceedings to
which said wards were parties, and could be heard,
and that there were no specific debts against said
estate, ascertained by the court, and hence the court
had no jurisdiction to make said decrees. Certified
copies of said decrees, are exhibited with and made part
of said bills.

These bills were demurred to, and the principal
cause of demurrer assigned, although in various forms
and with particular details, is that the decrees of the
court of pleas and quarter sessions exhibited in the
bills gave full power and authority to said guardian
to sell said lands and execute said deeds, the court
having jurisdiction to render the same, and that, as
appears on the face of said bills, the complainants' de-
mands are barred by the various statutes of limitations
and by laches, and the long lapse of time they have
slumbered upon their rights, if any they have, since
they might have instituted suit, etc.

Upon the hearing the chancellor was of opinion
that the proceedings of the court of pleas and quarter
sessions were valid and sufficient to authorize the sale
of said lands by the guardian, and to support the
deeds made by him to the purchasers, and the fee
simple title to the lands in controversy passed under

the same. He therefore sustained the demurrer and dismissed the bills. The complainants have appealed.

In the cases of these same complainants, against Ed. V. Harrison and others, and against John C. Couts and others, above referred to, we have held that the court of pleas and quarter sessions of Montgomery county was a court of record and general jurisdiction, and that its judgments and decrees impart absolute verity; that they can not be collaterally impeached, attacked or averred against, and that the attack here made upon them is a collateral attack; that the jurisdiction of the court over the subject-matter of the decrees or judgments being shown, its jurisdiction over the parties whose interests are affected will be presumed, unless it clearly appears, from the decrees themselves, that the court did not have jurisdiction of the persons, and that every presumption will be indulged in favor of the validity of its decrees which is not manifestly contradicted by the decrees themsevles; and that the decrees being made a part of the bill, the question as to their validity could be tried alone by the decrees themselves, and was properly raised by the demurrers.

Under this ruling it is sufficient to state, that it will be presumed that the application to sell these lands, descended to his wards, for the purpose of paying the debts of their ancestor existing against themselves, was properly made in compliance with the requirements of the law, as it then existed, unless it manifestly appears upon the face of said decrees that they were not so made. Concede that the application must have been

in writing, and that the minors must have been parties
to the proceeding, there is nothing upon the face of
these decrees to contradict the presumption that the
application was in writing and that the wards were
joined with the guardian in the petition, and although
we think it does appear, from the records, that they
were not made defendants, the decrees for that reason,
although erroneous, were not void: *Winchester* v. *Win-
chester*, 1 Head, 480; *Elrod* v. *Lancaster*, 2 Head,.
572; *Darby* v. *Anglen & Williams*, 4 Hayw., 244.

An adversary proceeding was not absolutely neces-
sary, even if contemplated by the statute, which we are
not prepared to hold. In the case of *Darby* v. *Anglen*
just cited, our own Supreme Court said: Why is the
application to the county court? Because they are pre-
sumed to know somewhat of the circumstances of the
estate, at least to possess the means of obtaining cor-
rect information concerning it. Why is the application
to come from the guardian? He is acquainted with
the wards' estate, both real and personal, has given an
inventory of it, and knows how far it has increased
or diminished since his appointment. He knows the
probability of a recovery or not, for he has been led
to converse and inquire upon that subject by means
of the character he has sometime sustained. He also
is *liable* for any unnecessary sale caused by an useless
application to court. He knows the value of the
assets in the hands of the administrator and can come
to an exact conclusion with respect to the existing
necessity for a sale or not.

From this it would seem that the guardian, if he

makes the application, must do so upon his own responsibility, and *is* *liable* if he procures an unnecessary sale, which would certainly not be the case if the same were adjudged, in a contest between the guardian and the ward, as adversary parties. We take these decrees as all having been made in the same proceeding, and in one of them the petition is mentioned. There being nothing then to contradict the presumption arising upon the record, that the application was made in accordance with the requirements of law, and the wards were properly before the court, it must be so held. It will be seen by the decrees above set forth that every fact required by the statute to authorize the court to make the decree, was ascertained by the court and recited in said decrees. It is urged, however, that the debts for which the decrees authorizing the sales to be made were not specifically ascertained, in amount and to whom due, etc. The Supreme Court of North Carolina, construing this statute at an early day, held this was not necessary: 3 Jones' Law, 96.

But if this were not so, as the evidences upon which the court ascertained the amount of the debts against the estate to be about $5,000 does not appear, it will be presumed they were ascertained in the manner required by law.

As we have said in the other cases referred to, these proceedings have been called in review after a lapse of more than sixty years. They were instituted and conducted by the father, as well as the guardian, of the ancestors of complainants, who disposed of his own life estate along with the interests of his children.

Pope *v.* Alwell.

He lived and acquiesced in the proceedings for over sixty years. Although complainants or their ancestors might have brought these suits at any time after the execution of said deeds, they failed to do so until all men who could have been cognizant of the facts connected with these transactions had passed away; and while the rights of these complainants to bring these suits are not barred by any direct statute, these circumstances do strengthen the presumptions as to the regularity of the proceedings arising and deducible from what does appear.

We do not see that any injustice has been done the complainants, but on the contrary, the evidences are strong that none has been done them. We are of opinion, therefore, that the proceedings under which the sales were made were valid, and the conveyances of the guardian passed the title in fee to the purchasers, and that the chancellor's decree sustaining the demurrers was correct. The Referees have come to the same conclusion and so reported. The exceptions will be disallowed, the report confirmed, and the chancellor's decrees dismissing the bills affirmed with costs.